Our third case for argument this morning is Ewing v. Carrier. Mr. Ewing. Good morning, your honors. May it please the court. Randall Ewing on behalf of the plaintiffs. We ask that you reverse the district court's errors of law because our claims are not barred by claim preclusion. This case arose out of our attempted purchase of a home under construction from a company called 1645 West Farragut LLC. Mr. Ewing, can you tell me the status of the first home that was purchased? The first suit that won against 1645 West Farragut? The jury awarded us a judgment of... Yes, $900,000. What is the status of that suit? Defendant's Rule 59 motion for a new trial is still pending decision. How long has it been pending? I believe about four months. The judge just dealt with their motion for judgment as a matter of law. And so the court's going to now turn to the motion for new trial. But in any event, it is not yet final in the district court. We agree on that? It is not yet final in the district court? I'm not sure. I haven't looked at that issue. The judgment's on the docket. I know an appeal makes it still final. No, I'm lost. If there is a motion for a new trial pending, there can't be an appeal. Has there been an appeal? No. So it's still not final. That may affect the claim of preclusion because normally non-final judgments don't support claims of preclusion. I'll be pursuing this with Mr. Novak. And that does seem fair. There is the doctrine of claim splitting, which is simply applying claim preclusion before there's a final judgment. But either way, that doctrine fails. Claim splitting is an aspect of the law of merger and bar. The terminology in the party's briefs is irregular. But please proceed. I understand, Your Honor. We tried to use claim preclusion and issue preclusion to separate the two doctrines consistent with the Supreme Court's identification. Claim splitting is an aspect of the doctrine of claim preclusion if you go by the current version of the restatement of judgments. One of the problems of terminology is that there was older terminology used in an earlier restatement. I understand, and I agree with Your Honor. The main issue is whether that judgment's final or not, whether you look at it under claim splitting or under claim preclusion. But I must say I don't understand why, in any event, why we are here. If Judge Coleman, in the first case, should have allowed Mr. Ewing to intervene or should have allowed him to add Carrier as a defendant, that will be corrected on appeal. Normally, you don't try to get an appellate correction in a still pending case by filing a second case. Well, Your Honor, we're not— That's usually viewed as pretty obnoxious. Your Honor, we're not trying to correct the district court's opinion on the denial of leave to amend. That decision was a decision saying you cannot join those claims with this case. That decision didn't say anything about whether we could file a separate case. And this idea that if you have a non— No, no, no. It's subject to challenge. Go ahead. No, no, no. Go ahead. You're not listening to my question. If there is—if Judge Coleman should have allowed Carrier to be a defendant in the original case, why isn't that a matter to be pursued on appeal in the original case? Judge Coleman couldn't say anything about a separate case because she didn't have a separate case before her. I'm trying to figure out what is the right way to litigate the sort of arguments you are making. And I'm having difficulty understanding why two cases are the right way to litigate what should all be in one case. Well, Your Honor, that could be corrected on the first appeal. If this court rules in our favor, we would have no need to appeal that decision. So it would actually moot any appeal that we would be interested in taking with respect to the judgment. But the fact is that the Supreme Court, Illinois courts, this court has said multiple times that you don't have to sue all joint tort feasors in one action. Now, their argument is, okay, maybe you didn't have to sue us in one action, but you made a motion— Look, I don't want to—what the Supreme Court of Illinois says doesn't affect questions of appropriate federal procedure. Your argument, an argument you make in your brief in this court, is that 1645 West Farragut and Carrier are alter egos. That is, they are the same thing. That's what the alter ego doctrine means. It's very hard to understand why you would have separate suits against something you characterize as one entity. Right? I can certainly understand trying to add Carrier personally in the first suit. I can understand trying to collect from Carrier in the judgment enforcement proceedings in the first suit if 1645 West Farragut and Carrier are a single entity. I'm having trouble understanding why federal courts should entertain two suits, and that's why we're here. Well, because this is a diversity case under the choice of law analysis, this court applies Illinois law, and Illinois law— Federal procedure is determined by federal law, not by state law, even in a diversity case. That's black-letter law. The parties don't seem to be aware of it, but it is. Okay. Well, either way, whether under federal law or Illinois law, it's fairly routine for separate actions to be brought for veil piercing to pierce the prior judgment. And the courts have said that those claims are not precluded because they're a different claim than the underlying liability claim. Defendants have not cited a single case to support this idea. Well, if you plead an alter ego claim, you thereby have admitted privity and forfeited your right to bring any other sort of claim. And it doesn't really— Yeah, I'm sorry. Finish your thought. And it doesn't really make sense that if a plaintiff has a non-precluded veil piercing claim and a plaintiff has a non-precluded fraud claim, that they have to choose between one or the other, that asserting the veil piercing will forfeit the fraud claim. Okay. Here's what you can help me with. I get it in the abstract, okay? I get what you're saying. Eric Carrier was front and center in, let's just call it Ewing 1, Case 1. He's all over that complaint, right? There's no possible way you can come in and say, look, it took discovery for us to even learn who Eric Carrier was, etc., etc. He's on the stage. He has a spotlight on him that way. And you use that fact, that reality to say, hence he's the alter ego. Let's veil pierce. Why isn't element 1, prong 1 of claim preclusion met on those facts, identity of interest? Well, they've asserted and the district court found three grounds for relationship, agency, control of the prior litigation, and his ownership of 1645. Right, so that's all – okay, go ahead. And it's very clear under the case law, both Illinois and federal, agency doesn't apply unless the plaintiff loses. They're not in privity. There's only a rule of special applicability, or as the Supreme Court called it in Bigelow, an exception to mutuality. Agency is irrelevant if we didn't lose the first – So one of the things – maybe this is a language, vocabulary point, I don't know. But your brief presents itself in the name over and over again of principles of mutuality, privity. The way I've read recent Supreme Court case law is to say, purge that from your vocabulary. Don't talk like that anymore. Talk about identity of interest, et cetera. So can you restate your position without referring to privities and mutuality? The position would be that they are a separate party because they don't have the identity of interest that is required for claim preclusion. Because he's a member? He's a member of the LLC versus suing him in his individual capacity or something? Yes. He didn't actually have overlapping – he didn't appear in the first trial as a – he appeared only as a representative for 1645, not in his own personal capacity. And this court addressed similar issues in Jackson versus Angus when it said a motion to amend is irrelevant for this analysis. But the main point is under control and ownership, agency is irrelevant. Under control and ownership, the Supreme Court has said multiple times for control, this is issue preclusion. In the restatement, the Supreme Court hasn't addressed ownership except in the Schnell case and the Nelson case where the Supreme Court said, well, we're going to leave for another day whether the owner who lost is issue precluded. They certainly didn't say, well, let's throw this whole case out the window because plaintiff's claims are actually claim precluded. It would also be really weird to have a rule that says you have to sue somebody the moment you file your first lawsuit if they control that litigation because you wouldn't know ahead of time who is going to control the litigation. And you often don't know ahead of time who the owners of LLCs are. So it would be unfair to place that burden on plaintiffs and say – Can you sue in federal court without knowing who the members of an LLC are? Well, you can sue the LLC and that's what we did. No, you can't. Diversity jurisdiction depends on the membership of the LLC. You have to know who the members are. Yes, Your Honor. And as it was handled in this case and it's usually handled, you do jurisdictional interrogatories after you file in order to determine whether there's diversity jurisdiction or not. That was done. But their argument is we had to sue them at the very beginning before we could even get to jurisdictional interrogatories or any idea to figure out who the owners were. Mr. Newman, can I trouble you with one more question? Certainly. So suppose you win. Winning would mean you go back in front of Judge Ness, right, go back with your complaint that way. There's no claim preclusion here. Is it your – would it be your intent to argue issue preclusion on some dimension of liability relying upon the first case? Or would you say, no, no, no, there's no issue preclusion about anything. We're just here to litigate the substance of the claim. Under the controlling precedent and restatement, Eric Carrier should be issue precluded from contesting liability because he controlled the first litigation and was an owner who was involved in the litigation. Under the Supreme Court precedent and the restatement, D'April is entitled to relitigate liability. They're not bound by the first lawsuit. And we are not entitled to seek higher damages than we were awarded in the first lawsuit. That's everything, the restatement, Wright and Miller, and all the controlling precedent provides. Thanks. Thank you. Goodness, Mr. Novak, are you planning to read all those things in a ten-minute argument? Judge, I've learned from arguing before this court that you never know which case is going to be focused on. So I bring all the cases here so that I can respond appropriately. Mr. Craig represents the other appellee and has been kind enough to cede his argument time, all ten minutes, to me. But he's here and has asked me to ask you that if you have any questions specific to his client that you could direct them to him, and he'll be happy to approach the bench. But I think in the opening dialogue, the nail has been hit on the head. Forget about for a second what nomenclature you use. The problem the plaintiff has, plaintiffs have, is that they've got two cases going at the same time about the same issue. What's the issue? The issue is can they now join, can they sue Carrier and D'April? They've asked Judge Coleman to do that by amendment at a time when they could have easily if they really believed a separate case was required. Did you ask Judge Ness to stay the proceedings in this case until the first case was finally resolved? Are you asking did we or? Yes, did you do that? I don't believe we did. I don't understand why when you have two simultaneously pending federal suits about the very same thing, the second judge shouldn't stay the proceedings as a matter of federal law until the first case is over. I think that's certainly something that the plaintiffs could have asked for. No, plaintiffs don't ask for judges to stay their own lawsuits. Well, they shouldn't have filed. Defendants ask for that relief, where judges may do it on their own. I gather you did not ask. We did not, and apparently counsel believed a better motion to get rid of the case was dismissal and it succeeded. A stay would not have needed two appeals. We are now in a world where we're going to have at least two appeals and maybe three about the very same dispute. Because the first case will be appealed when it's all over. Then there'll be judgment collection proceedings in the first case, and my bet is they will be appealed because there'll be an effort to collect the $900,000 judgment from Carrier personally. Two, three, how many appeals? A stay in this case would have meant we would certainly save at least one appeal. It may well have, but, Judge, I don't think that's the defendant's obligation. The defendant saw a dismissal motion, took that route, and prevailed. The problem here, the reason there's multiple suits is because the plaintiffs first didn't sue Carrier when they could have, and then when they decided they wanted to bring a filed case, they could have done it by going to a second court. They chose an amendment. Here's what's happened. The amendment was denied. They then filed this suit. So now we've got two bites at the apple. Then they get faced with a motion to dismiss this case, arguing Arrigo, et cetera. They go back to Judge Coleman, and they say to Judge Coleman, please make it clear that you meant that we could still file a case. Judge Coleman obviously denies it. They made the same arguments before Judge Coleman that two weeks earlier they made in front of Judge Ness. So was there some reason why this case went to Judge Ness? I mean, what is the procedure down there? On a case of the same subject matter, why was this not assigned to Judge Coleman? Well, I think, again, because of the way plaintiffs behaved. They didn't say this is a related case. They didn't go to either Judge Ness or Judge Coleman and say, why don't we consolidate? Couldn't you have called it a related case? We could have. But, Judge, we had a good motion. I say we. I wasn't involved in the district court. Defendants thought they had a real good motion for dismissal, and they did. Because whether you call a claim splitting and under Supreme Court, Illinois Supreme Court, which you are supposed to follow state law and the effect of prior cases, there's no need for a final judgment for claim splitting. That was a great motion, and it prevailed. The blame here shouldn't be put on defendants because the plaintiffs filed two cases, and not only did they go to Judge Coleman the second time, bad enough, arguing the same things they were arguing in front of Judge Ness. Let's go to two different judges. Let's whipsaw them, see if we can get one to bite. After the Judge Ness dismissal order, after they filed this appeal, they went back before Judge Coleman making all the same arguments about race judicata that doesn't apply, as if Judge Coleman could now reverse Judge Ness, which is what they're asking this court to do. They've got two judges that they're going to arguing the same issues. We have too many cases before too many judges. Without a doubt. And there is plenty of blame to go around, it seems to me. You can't say, well, we're the defendants, so we don't have to do anything to make sure that proper procedure is carried out. Proper procedure is for this second case to have gone to Judge Coleman and be stayed, and nobody asked Judge Ness for that. All the lawyers bear responsibility for their decisions. That may be, Your Honor, but the solution now, we are where we are. The solution now is to affirm that dismissal. Or it's to reverse and direct Judge Ness to do what he should have done. That's certainly possible. I would never say that that wasn't a possible result. I think that's a result that's unfair to the defendants. The defendants have been dragged into the two proceedings, not by choice. The plaintiffs could have solved this problem at either of two stages. One, file the case against Carrier at the outset. They gave a phony reason, a phony reason to Judge Coleman why they couldn't file a claim against the principal member of the LLC, the only person who they allege made the misrepresentations. Judge Coleman saw through that. She denied that motion. Okay, bad enough. Now they file the motion for leave to amend. They lose. They've got an appeal right. That's the only remedy available under this court's rulings. But what did they do? They didn't do that. They now file the second case. So twice they had the ability to avoid two cases. Twice they didn't do it. And even if we had come forward and cured their problem, the problem that they solved, that doesn't change the fact that they caused the problem and those two cases were pending, even if it was just for the period of time to stay in. They tendered whether they could bring the case against Carrier to Judge Coleman. That was their election, if you will, an election of remedies. That's who they went to. That should have ended it. When they filed this case against us, that was claim splitting. It was burdening the court. It was burdening the defendants. And they are the ones that should be held responsible. They say it would be unfair, but it was their actions that led to this consequence. Everybody suffers the consequences of their actions. For goodness sakes, their main argument on summary judgment that they prevailed on before Judge Coleman was that our predecessor counsel didn't file a Rule 56 statement in response. So Judge Coleman accepted all of the facts as true, even though there were disputed facts. And plaintiffs seized on that. And they said, well, Judge, you should hold them to their error, and that's just a consequence of what they did. We're saying the same thing. Go ahead. Go ahead. They should be held to the consequences of what they did. I just want to confirm one thing. Everything you're saying applies equally, as I'm hearing it, both as to Mr. Carrier and as to the firm, D'April. Under their theory of the case, that's right. And under the arguments that you're presenting.  Let's change the facts for a second. Let's suppose that the lawsuit, lawsuit number two in front of Judge Ness, there's one and only one defendant named, D'April. How do you deal with that? You said the same thing. Analysis is the same. I think it is the same because the judgment or the decision that we're relying on is not the summary judgment decision. We're relying on the decision to deny leave to amend. Okay. That denial was against both defendants. Yeah. That's the way I'm hearing you argue. Yeah. The identity of interest issue gets a little more – the reason I'm asking is the identity of interest analysis. If you want to just think about that in isolation, it's harder as to just D'April. I think it probably is. It's sort of a two-step. It's a lot easier in the second lawsuit when Carrier is named because you say Carrier? Carrier is in the middle of the stage of case number one from the very beginning. So I'm not arguing – I'm just making some observations that if we just change this a little bit, it's much harder as to just isolating D'April in case number two. I still don't think that that changes what you're saying about, no, we're challenging the denial of leave to amend. And that involved D'April too. Correct. All right. And that's the problem here. At the same time, even today, today they're still asking two courts to make the same decision. Thank you, counsel. Thank you, counsel. Oh, thank you, Your Honor.